IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRY L. CLARK, JR., and<br>MELISSA CLARK,<br><br>      Plaintiff<br><br>v.<br><br>PALM HARBOR HOMES, INC.<br>d/b/a PALM HARBOR VILLAGE<br>a/k/a PALM HARBOR FACTORY<br>CLEARANCE CENTER,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   CV-01-B-1379-S<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### I. JURISDICTION AND PARTIES

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 U.S.C. §§ 1332, there being more than $100,000.00 in controversy, and this matter being between citizens of different states.

2. Plaintiffs, Terry L. Clark, Jr., and Melissa Clark are individual residents of Adamsville, Jefferson County, Alabama.

3. The defendant Palm Harbor Homes, Inc. d/b/a Palm Harbor Village a/k/a Palm Harbor Factory Clearance Center is a corporation believed to have been formed in a state other than Alabama, with its principle place of business located in Dallas, Texas.

4. This is an action for intentional fraud involving egregious circumstances, and plaintiffs are seeking compensatory and punitive damages in excess of $100,000.00.

## II. CAUSES OF ACTION

### Count One: Fraud

5.   Plaintiffs adopt and reallege each and every material allegation contained in paragraphs 1-4 as if fully set forth herein.

6.   On or about September 10, 2000, plaintiffs put $500.00 down on a used mobile home being sold by defendant, and defendant agreed to retain said home until plaintiffs had paid the entire $1,715.00 down payment, which defendant required to finance the sale of said home.

7.   On or about October 1, 2000, the salesperson contacted plaintiffs and advised them that the mobile home that they had purchased was sold to someone else and that they needed to select another one. Plaintiffs went to the dealership and selected a second home to purchase, which they were told was a 1997 model repossession.

8.   On or about October 15, 2000, plaintiffs went back to the dealership to pay an additional $260.00 toward the $1,215.00 down payment. On this occasion, a female employee of defendant took them to an office so that paperwork could be completed.

9.   Said female employee placed a stack of documents in front of plaintiff Terry L. Clark, Jr., and told him to read the papers and sign them. Plaintiff Melissa Clark then advised said agent or employee of defendant that plaintiff Terry L. Clark, Jr., <u>could not read</u> and was slow signing his name. Plaintiff Melissa Clark then requested if she could read the documents to plaintiff Terry L. Clark, Jr., before he signed them, and the female agent or employee told them that she "was sorry," but she "could not let

anybody else read his papers." The female agent or employee then told plaintiff that all the documents did was to say that he does want the home.

10. Terry L. Clark, Jr., then began signing his name, and he was so slow that the female agent or employee of defendant signed plaintiff's name on some of the documents.

11. Plaintiffs were then told that they would not need any insurance on the home for the first three years because the insurance was free with the purchase.

12. Plaintiff Melissa Clark subsequently contacted the male agent or employee of defendant from whom they bought the mobile home to inquire as to whether the home could be delivered before they had to pay the balance of the down payment.

13. Said male agent or employee advised her that they had to bring the entire down payment to the dealership prior to it being delivered, but that they could bring a check post-dated 30 days and that they would hold the check 30 days, but would go ahead and the deliver the home upon receipt of the check.

14. In reliance upon this representation, plaintiffs delivered $500.00 in cash and a $450.00 check, post-dated 30 days, to the defendant on or about October 30, 2000.

15. Plaintiffs then wrote the directions down to the lot to which the trailer was to be delivered.

16. On or about November 1, 2000, defendant called plaintiff and told her that the mobile home would not go on that lot. The plaintiffs then found another lot and advised defendants of same. Defendant was to deliver said mobile home to the second

lot, but instead left it in the road near the lot. Prior to abandoning the trailer in the road, they dropped it, bent the frame and tongue and dragged it on its bottom, tearing up wiring and duct work.

17. Plaintiffs then contacted defendant to apprise them of the situation and requested their money back.

18. Plaintiffs' money was not returned to them and, further, defendant did not hold the aforesaid check for 30 days as represented. Instead, defendant deposited said check immediately upon receipt thereof and caused a number of checks to be dishonored and caused plaintiffs to have to pay significant charges for each dishonored check.

19. Upon review of the documents, which plaintiffs were not permitted to read prior to signing, plaintiffs have now learned that $1,137.00 of the $1,715.00 paid to defendant was not part of a down payment, but was for "various fees and insurance" and that, unbeknownst to plaintiffs, defendant had agreed to deliver, set up and level plaintiffs' home, including having installed the air conditioner, none of which was done. Additionally, contrary to defendant's misrepresentations, there was no insurance provided <u>free</u> with this home, but plaintiffs, in fact, were charged and paid $1,137.00 to defendant for one year of physical damages insurance. Additionally, defendant misrepresented that it would hold the check for 30 days, which it did not.

20. In reliance upon all of the aforesaid intentional, reckless misrepresentations or fraudulent failure to disclose that which defendant had a duty to disclose, plaintiffs paid defendant $1,715.00 and additionally paid several hundred