IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY L. CLARK, JR., and<br>MELISSA CLARK,<br><br>    Plaintiffs,<br><br>v.<br><br>PALM HARBOR HOMES, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   CASE NO. CV 01-B-1379-S<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Currently before the court is a Motion to Compel Arbitration and Stay Proceedings pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, filed by Defendant Palm Harbor Homes, Inc. ("defendant" or "Palm Harbor"). Plaintiffs Terry L. Clark, Jr., and Melissa Clark assert claims of fraud and breach of contract against defendant. Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### I. STATEMENT OF FACTS

Plaintiffs' claims of fraud and breach of contract arise out of the purchase of a mobile home manufactured by Palm Harbor. Palm Harbor manufactures mobile homes and has manufacturing facilities in Georgia, Ohio, North Carolina, Florida, Texas, Arizona, Oregon, and Alabama. (Pratt Aff. ¶ 5.) Palm Harbor also sells the homes it manufactures throughout the Southeast. (*Id.* ¶ 9.) In particular, Palm Harbor sells some of the homes it manufactures from the Palm Harbor Factory Clearance Center ("Clearance Center") in Tuscaloosa, Alabama. (*See* Mot. Compel, Ex. A at 1.)

On or about October 15, 2000, plaintiffs went to the Clearance Center to make a cash payment towards the down payment on a mobile home that Mr. Clark was purchasing from defendant. (Terry Clark Aff. ¶ 2; Melissa Clark Aff. ¶ 2.) When they arrived, Chad Noland, the sales representative who had been helping them, was helping another customer. (Terry Clark Aff. ¶ 3; Melissa Clark Aff. ¶ 3; Noland Aff. ¶ 3.) According to the Clarks, a female representative who identified herself as Amy took the cash payment and said that she would give them a receipt and prepare all the sales documents for execution. (Terry Clark Aff. ¶ 3; Melissa Clark Aff. ¶ 3.) Amy returned with the receipt and a stack of documents and advised Mr. Clark that he needed to read and sign all of the documents. (*Id.*) According to the Clarks, Ms. Clark told Amy that Ms. Clark would have to read the documents to Mr. Clark because he cannot read or write. (*Id.*) According to the Clarks, Amy replied that she could not let anyone else read or sign the documents. (*Id.*) Ms. Clark told Amy that Mr. Clark could sign his name. (*Id.*) Amy then told them that the documents "simply acknowledged that [Mr. Clark] wanted the mobile home." (*Id.*) According to the Clarks, Mr. Clark asked Amy to "put an 'X' by, or otherwise, show [him] where to sign." (Terry Clark Aff. ¶ 4; Melissa Clark ¶ 4.) Amy did so, and Mr. Clark signed the documents. (*Id.*) According to the Clarks, Ms. Clark did not read the documents because she was not permitted to do so. (Terry Clark Aff. ¶ 5; Melissa Clark Aff. ¶ 5.)

According to the sales agents who helped the Clarks, Chad Noland ("Noland") and Teresa Crawford ("Crawford"), the Clarks did not tell anyone that Mr. Clark could not read until the home had been delivered, which was after the documents had been signed. (Crawford Aff. ¶ 6; Noland Aff. ¶ 5.) Noland and Crawford testified that when the Clarks went to the Clearance

Center, Crawford helped them with the paperwork. (Noland Aff. ¶ 3; Crawford Aff. ¶ 2.) Crawford testified that neither of the Clarks told her that Mr. Clark could not read. (Crawford Aff. ¶ 3.) Crawford testified that she never refused to allow Ms. Clark to read any of the documents. (*Id.*) According to Crawford, Ms. Clark was sitting close enough to Mr. Clark that she could have read the documents without asking permission to do so. (*Id.*)

Mr. Clark signed or initialed approximately fifteen documents that day. (*Id.* ¶ 5.) It is undisputed that Mr. Clark signed a sales contract for the purchase of the home. (*See* Mot. Compel, Ex. A at 1.) The sales contract states: "NOTE: SEE THE 'ARBITRATION PROVISION AND AGREEMENT' WHICH IS PART OF THIS TRANSACTION." (*Id.*, Ex. A at 1 (emphasis in original).) Mr. Clark also signed the Arbitration Provision which states in pertinent part:

> The parties to the Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home which is the subject of the Retail Installment Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final and binding arbitration before a three-judge panel of the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA. Judgment on the arbitration award may be entered in any court having jurisdiction.
>
> . . .
>
> The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, the manufacturer of the home which is the subject of the Retail Installment Contract or Cash Sale Contract as fully as if the manufacturer was a signatory to the Retail Installment Contract or Cash Sale Contract.

> . . .
>
> The parties agree that any contests to the validity or enforceability of this Arbitration Provision, or any other part of the Retail Installment Contract or Cash Sale Contract or related documentation, will be determined by arbitration in accordance with the terms of this Arbitration Provision. The parties further agree that in the event a dispute arises as to whether any claim, dispute or controversy is subject to this Arbitration Provision, that issue shall be decided by arbitration in the same manner and with the same effect as all other controversies subject to this Arbitration Provision.
>
> The parties understand they have the right to have any disputes between them decided in court, but they choose instead to have any such disputes decided by arbitration in order to avoid the burden, expense and uncertainty of the judicial process.
>
> . . .

(*Id.*, Ex. B.)

## II. DISCUSSION

Congress enacted the FAA to reverse longstanding judicial hostility toward arbitration agreements and to place them upon the same footing as other contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987). Congress' preeminent goal in passing the FAA "was to enforce private agreements into which parties had entered." *Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The FAA "makes a written agreement to arbitrate 'in any maritime transaction or a contract evidencing a transaction involving commerce . . . valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Mitsubishi Motors*, 743 U.S. at 625 (quoting

9 U.S.C. § 2).[1] "The FAA also provides for stays of proceedings in federal district courts when an issue in a proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer*, 500 U.S. at 25. The Supreme Court has declared that these provisions manifest a "liberal federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

"The FAA puts arbitration clauses on even footing with all other clauses in a contract." *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998) (special concurrence of Cox, Circuit Judge, for the majority of the court). Arbitration clauses "are therefore interpreted according to ordinary state-law rules of contract construction." *Id.* "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The sales contract provides that Alabama state law should be used in construing and applying the terms of the contract. (*See* Mot. Compel, Ex. A at 2.) Under Alabama law, the requisite elements of a contract are offer, acceptance, consideration, and mutual assent to the terms essential to the formation of a contract. *Southern Energy Homes, Inc. v. Hennis*, 776 So. 2d 105, 108 (Ala. 2000).

Plaintiffs contend that the arbitration provision is not enforceable against them because they "did not knowingly, willingly and voluntarily agree to the arbitration clause and that it is

---

[1] A contract containing an arbitration agreement is enforceable under the FAA if it evidences a transaction involving interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 282 (1995). Because it is undisputed that the contract at issue evidences a transaction involving interstate commerce, (*see* Pratt Aff. ¶¶ 4-11), the contract at issue is within the FAA's coverage. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 402 (1967).

5

unconscionable." (Pls' Response at 1.) Although it is undisputed that Mr. Clark signed the sales agreement and the arbitration provision, plaintiffs argue that the arbitration provision should not be enforced against them because Mr. Clark did not assent to its terms. (*See id.* at 2.) In support of this contention, plaintiffs contend that Mr. Clark is illiterate and cannot read, that defendant denied Ms. Clark's request to read the documents to him, and that defendant "misrepresented to plaintiffs that the documents simply reflected that plaintiffs wanted to buy the mobile home." (*Id.*) In sum, plaintiffs argue that the arbitration provision is unenforceable because Mr. Clark's "signature was procured by fraud." (*Id.*)

Resolution of the issue depends upon whether the fraud plaintiff alleges is fraud in the factum, fraud in the inducement of the arbitration clause itself, or fraud in the inducement of the contract generally. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, the Supreme Court held that under the FAA a federal court may adjudicate the issue of fraud in the inducement *of the arbitration clause itself*. See 388 U.S. 395, 403-04 (1967). However, a federal court may not consider a claim of fraud in the inducement *of the contract generally*; that issue is for the arbitrator to decide. *See id.*, 388 U.S. at 404. A claim of "fraud in the factum, i.e., ineffective assent to the contract, [] is not subject to resolution pursuant to an arbitration clause" but rather is adjudicated by the court. *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986).

It is undisputed that Mr. Clark signed a sales contract for the purchase of a manufactured home, (*see* Mot. Compel., Ex. A at 1), and that Mr. Clark intended to purchase the home and signed the contract in furtherance of that intention. It is also undisputed that the sales contract incorporated by reference the Arbitration Provision by the following language: "NOTE: SEE

6

THE 'ARBITRATION PROVISION AND AGREEMENT' WHICH IS PART OF THIS TRANSACTION." (*Id.* (emphasis in original).) Mr. Clark also signed the Arbitration Provision. (*Id.*, Ex. B.)

Fraud in the factum occurs where "a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract . . . ." RESTATEMENT (SECOND) OF CONTRACTS § 163 (1981). According to plaintiffs, defendant's agent represented to them that the documents "acknowledged that [Mr. Clark] wanted the mobile home." (Terry Clark Aff. ¶ 3; Melissa Clark Aff. ¶ 3.) Because defendant's representation is consistent with the character and essential terms of the sales contract of which the Arbitration Provision is a part and because the Clarks knew that the sales contract concerned the purchase of a mobile home, any allegation or evidence of fraud is of fraud in the inducement rather than fraud in the factum.

In determining whether plaintiffs allege fraud in the inducement of the contract generally or in the inducement of the arbitration provision, the Alabama Supreme Court's opinion in *Anniston Lincoln Mercury Dodge v. Conner* is instructive. *See* 720 So.2d 898 (Ala. 1998). In *Conner*, the plaintiff who had signed a contract containing an arbitration clause claimed that arbitration of her automobile purchase dispute was inappropriate because she did not speak English and thus could not have assented to the contract. *See* 720 So. 2d at 900. Recognizing that the plaintiff's inability to speak English bears upon the contract as a whole rather than merely the arbitration clause, the Alabama Supreme Court concluded that the plaintiff's claims of fraud went to the making of the entire contract, rather than to the arbitration clause. *See id.* at

7

902. The court noted that "Conner has not alleged that [the defendant] treated the arbitration clause differently from the way it treated any other provision of the contract, instead, she has merely argued that the arbitration clause was fraudulently induced because [the defendant] . . . failed to disclose the existence of that clause." *Id.* The court determined that Conner had alleged fraud in the inducement of the contract generally, and, applying *Prima Paint*, concluded that the allegation should have been decided by the arbitrator rather than the court. *Id.*

Like the plaintiff in *Connor*, Mr. Clark signed a contract containing an arbitration provision. (*See* Mot. Compel, Ex. A at 1.) Like the plaintiff in Connor, the Clarks maintain that they could not have assented to the arbitration provision because Mr. Clark cannot read and Ms. Clark was not allowed to read the contract. (*See* Terry Clark Aff. ¶¶ 3, 5; Melissa Clark Aff. ¶¶ 3,5.) Because the Clarks do not allege that the Arbitration Provision was treated differently than any other term or provision of the sales contract, they have alleged fraud in the inducement of the contract generally, rather than fraud in the inducement of the Arbitration Provision. Therefore, if the Arbitration Provision is broad enough to encompass disputes concerning the arbitrability of the dispute, then the issue of whether or not Mr. Clark is bound by the Arbitration Provision is for the arbitrator rather than this court to decide. *See Prima Paint*, 388 U.S. at 404, 406. The Arbitration Provision provides in pertinent part:

> The parties to the [sales contract] agree that **any and all controversies or claims** arising out of or in any way relating to [the sales contract] or the negotiation, . . . or sale/disposition of the home which is the subject of the [sales contract] . . . will be settled solely by means of final and binding arbitration . . . .
>
> The parties agree that **any contests to the validity or enforceability of this Arbitration Provision, or any other part of the [sales contract] or related documentation, will be determined by arbitration** . . . . The parties further agree that **in**

> **the event a dispute arises as to whether any claim, dispute or controversy is subject to this Arbitration Provision, that issue shall be decided by arbitration** in the same manner and with the same effect as all other controversies subject to this Arbitration Provision.

(*Id.*, Ex. B (emphasis added).) This language is broad enough to encompass plaintiffs' claim that the sales agreement was procured by fraud and plaintiffs' claim that Mr. Clark[2] did not assent to the Arbitration Provision. *See Prima Paint*, 388 U.S. at 406. Therefore, the arbitrator, rather than this court, should determine whether plaintiffs are required under the Arbitration Provision to arbitrate their claims against Palm Harbor.[3]

---

[2] Although Ms. Clark did not sign the arbitration provision, because she must rely on the sales agreement containing the arbitration provision executed by her husband as the basis for her claims against Palm Harbor, her ability to avoid the enforcement of the arbitration provision is no greater than his. *See Infiniti of Mobile, Inc. v. Office*, 727 So. 2d 42, 48 (Ala. 1999).

[3] Plaintiffs' claim that the arbitration provision is unconscionable is not for the court to decide. (Pls' Response at 2-3.) *See Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement.").

9

## CONCLUSION

For the reasons stated herein, the court is of the opinion that defendant's motion to compel arbitration is due to be granted, so that under *Prima Paint*, the arbitrator may decide whether plaintiffs are required to arbitrate their claims against Palm Harbor. In lieu of staying this action, the court will dismiss this case without prejudice.

**DONE** this ____5th____ day of August, 2002.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge